UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ENCORE D.E.C., LLC, a Nevada limited
liability company,

                Plaintiff,

     v.

APRES1 I, LLC, a Washington limited
liability company; AMERICAN
PETROLEUM ENVIRONMENTAL
SERVICES, INC.; and MICHAEL MAZZA,
an individual,

                Defendants.

Case No. 3:14-cv-01238-ST

OPINION AND ORDER

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Encore D.E.C., LLC ("Encore"), is a Nevada limited liability company

comprised of three members who all reside in Reno, Nevada.  Defendant, APES1 I, LLC

("APES1"), is a Washington limited liability company.  Defendant, American Petroleum

Environmental Services, Inc. ("American Petroleum"), is a Washington corporation.  Both

APES1 and American Petroleum are owned by defendant, Michael Mazza ("Mazza"), who

resides in Washington.

1 – OPINION AND ORDER

In December 2013, Encore sold its real property in Portland, Oregon, and its interest in American Recyclers, LLC ("American Recyclers"), to APES1 for $4 million. To pay $2 million of the purchase price, APES1 conveyed to Encore a piece of real property located in the City of Tacoma, Pierce County, Washington ("Tacoma Property"), which it agreed to lease back from Encore. Encore subsequently learned that as a result of soil contamination and code compliance violations which APES1 failed to disclose, the Tacoma Property is worth only $150,000.00.

Encore initially filed this lawsuit on or about June 11, 2014, in the Multnomah County Circuit Court in the State of Oregon, Case No. 14CV06840, against defendants, alleging five claims for misrepresentation, negligence, breach of contract, indemnification, and waste. After serving defendants, Encore filed an Amended Complaint which eliminated the indemnification claim. Defendants then timely removed this case on August 1, 2014, based on diversity jurisdiction under 28 USC § 1332. Six days later, on August 7, 2014, Encore filed a second lawsuit in Pierce County Superior Court in the State of Washington, against the same three defendants, *Encore D.E.C., LLC v. APES1, LLC et al.*, No. 14-2-11342-6, alleging claims arising out of the lease (specific performance, breach of contract, indemnification, and waste after the tenancy commenced). By stipulation, Encore filed a Second Amended Complaint in this case on September 15, 2014 (docket #19). Encore has declined defendants' request to transfer this case to the United States District Court for the Western District of Washington at Tacoma or to consolidate the two pending cases.

Pursuant to 28 USC § 1404, defendants have filed a motion to transfer venue[1] of this case to the Western District of Washington or, in the alternative, to dismiss the Fourth Claim ("waste") as it relates to alleged conduct occurring while defendants still owned the Tacoma

---

[1] "A motion to transfer venue is a non-dispositive matter falling within the province of a United States Magistrate Judge." *Penguin Grp. (USA) Inc. v. Am. Buddha*, No. 3:13-cv-00497-HU, 2013 WL 6385916, at *1 n1 (D Or Dec. 6, 2013); *see also Pavao v. Unifund CCR Partners*, 934 F Supp2d 1238, 1241 n1 (SD Cal 2013) (citing cases).

Property at issue and the Second Claim ("negligence") as it relates to an alleged "duty to take

reasonable care to investigate, characterize, and contain the contaminated soil and address [code]

violations," pursuant to FRCP 12(b)(6).  For the reasons set forth below, the motion to transfer

venue is granted.

## ALLEGATIONS AND UNDISPUTED FACTS

### I.     Background

In October 2010, APES1 and Encore formed American Recyclers.  Mazza Decl. (docket

#12), ¶ 2 & Ex. A.  American Recyclers owned and operated a facility in Portland, Oregon, that

processed used motor oil into various refined oil products ("Portland Refinery").  *Id*.  APES1

provided the refinery equipment, and Encore provided the real property ("Portland Property")

where the refinery operated.  *Id*.  American Recyclers had two managers:  Mazza, who was

APES1's manager and sole owner, and Randy Soule, who was Encore's 70% owner.  *Id*.

On multiple occasions in 2012 due to disagreements with Mazza, Soule attempted to

unilaterally shut down the Portland Refinery, fire all of the employees, and rehire them as Encore

employees.  *Id*, ¶ 3 & Ex. B (Castro Decl.), ¶¶ 4–10.  After being notified that the operating

agreement for American Recyclers prohibited Soule's conduct, Encore filed suit in July 2013 in

the Multnomah County Circuit Court in the State of Oregon to evict American Recyclers from

the Portland Property.  *Id*; Elkins Decl. (docket #22), ¶ 8.  After holding a hearing, the court

entered an Order and General Judgment requiring American Recyclers to vacate the Portland

Property by December 31, 2013.  Elkins Decl., Ex. E.

In August 2013, APES1 and American Recyclers sued Encore and Soule in Pierce

County Superior Court in the State of Washington, alleging that Soule breached his fiduciary

duties to American Recyclers for trying to shut down the refinery and directing its eviction

through Encore.  Gilman Decl. (docket #11), Exs. C–D.  That court entered a preliminary

injunction against Soule.  *Id*, Ex. G.

To resolve this litigation, the parties held two settlement conferences in Portland, Oregon,

one in March and one in September 2013.  Elkins Decl., ¶ 10; Soule Decl. (docket #23), ¶¶ 8–10.

Attending the settlement conferences in person were the parties (Soule and Mazza), as well as

Tiffany A. Elkins, Encore's Portland attorney, and Richard Todd, an Oregon attorney who had

represented American Recyclers in defending Encore's forcible entry and detainer action.  Elkins

Decl. ¶ 10-11; Soule Decl., ¶ 8; Johnson Decl. (docket #28), ¶¶ 6, 12–13.  In at least one of the

settlement conferences, Mazza made representations about the value of the assets, including the

Tacoma Property.  Elkins Decl., ¶ 10; Soule Decl., ¶ 10.  No settlement conferences were held in

Washington or attended by Brooke A. Johnson, American Recycler's Tacoma attorney.  Elkins

Decl., ¶ 10.  However, Ms. Johnson negotiated the final terms and conditions of the settlement

agreement.  Todd Decl. (docket #27), ¶ 5.

The parties subsequently signed a settlement agreement effective October 1, 2013.

Gilman Decl., ¶ 9; Soule Decl., ¶ 8.  That settlement contemplated the global sale of American

Recyclers with options for either Mazza or Soule to buy out the other according to a contractual

schedule.  Gilman Decl., ¶ 9.  The Washington lawsuit was dismissed by stipulation on

October 25, 2013.  *Id*, Ex. H.  However, within a week by letter dated October 30, 2013, Encore

rescinded the settlement agreement.  *Id*, Ex. I.

## II.    **Tacoma Property Transaction**

On December 17, 2013, Encore and APES1 entered into a Purchase and Sale Agreement

("PSA") in which APES1 agreed to purchase the Portland Property and Encore's 50%

membership interest in American Recyclers for $4 million.  Soule Decl., Ex B.  Part of the

consideration ($2 million) came in the form of a transfer of the Tacoma Property owned by APES1 to Encore. *Id.* Defendants agreed to lease the Tacoma Property back from Encore while Encore tried to find a buyer. *Id.* Ms. Johnson negotiated the PSA on behalf of defendants from her Tacoma office. Johnson Decl., ¶ 3. Mr. Todd was not significantly involved in those negotiations. *Id*, ¶ 15.

The PSA provided for a 20-day due diligence period during which the parties "shall provide all documents and other information with respect to the Properties and Interest as requested by either Party." Soule Decl., Ex. B, ¶ 11. During this due diligence period, Encore did not request any documentation from defendants' counsel regarding the environmental condition of the Tacoma Property or pertaining to the contemplated transaction. Johnson Decl., ¶ 4. Encore also did not request that defendants make any representations or warranties beyond those contained in the PSA, none of which relate to the condition of the Tacoma Property. *Id*. However, in the PSA, defendants represented that "[t]here are no contracts or tenant leases affecting the Tacoma Property other than a current [PSA]." Soule Decl., Ex. B, ¶ 15(c). Encore received both the deed and lease for the Tacoma Property by December 30, 2013. Johnson Decl., Exs. B–C.

Following the December 30, 2013 closing, Encore listed the Tacoma Property for sale through Kit Matsen, a real estate agent in Tacoma. Mazza Decl., ¶ 4. Encore later entered into negotiations with the City of Tacoma to purchase the Tacoma Property. Second Amended Complaint, ¶ 11. As part of its due diligence, the City of Tacoma hired Landau Associates, a Tacoma-based environmental consulting firm, to conduct a review. Gilman Decl., Ex. B. Landau Associates issued its report dated May 8, 2014. *Id*. Based on that report, the City of Tacoma informed Encore that the Tacoma Property was contaminated with various hazardous

substances dating back to 2005 and that various code violations had been issued to defendants

prior to December 30, 2013.  Second Amended Complaint, ¶¶ 12-14.  Encore also learned that

defendants knew about the contamination when it purchased the Tacoma Property in 2006 and

had executed an agreement with the City of Tacoma to correct the code violations before

October 2013, but had failed to do so.  *Id*, ¶ 15; Soule Decl., ¶ 7 & Ex. C.  As a result, the fair

market value of the Tacoma Property is $150,000.00.  Second Amended Complaint, ¶ 16.

Presumably the City of Tacoma refused to pay the price contemplated by Encore, resulting in

this lawsuit.

## DISCUSSION

### I.  Motion to Transfer Venue

Pursuant to 28 USC § 1404, defendants seek to transfer venue of this case to the Western

District of Washington at Tacoma.  They assert that unlike Washington, Oregon has little interest

in adjudicating this dispute between Washington defendants and a Nevada plaintiff over

environmentally damaged property in Tacoma, especially when a related lawsuit is pending in

Pierce County Superior Court in Washington.  This court agrees.

#### A.  Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought or

to any district or division to which all parties have consented."  28 USC § 1404(a).  When

deciding a motion under 28 USC § 1404(a), a district court must engage in a two-step inquiry.

First, the district court must consider whether the action could have been brought in the proposed

forum.  *Hatch v. Reliance Ins. Co.*, 758 F2d 409, 414 (9th Cir 1985).  An action is one that might

have been brought in the transferee court when (1) the transferee court would have had subject

matter jurisdiction at the time the action was filed; (2) defendants would have been subject to

personal jurisdiction; and (3) venue would have been proper.  *E. & J. Gallo Winery v. F. and P.*

*S.p.A.*, 899 F Supp 465, 466 (ED Cal 1994), citing *Hoffman v. Blaski*, 363 US 335 (1960)

(additional citation omitted).  If the action could have been brought in the proposed forum, then

the court must consider whether the convenience of the parties, the convenience of the witnesses,

and the interest of justice weigh in favor of transferring venue to that forum.  This step of the

inquiry requires an "individualized, case-by-case consideration of convenience and fairness."

*Jones v. GNC Franchising, Inc.*, 211 F3d 495, 498 (9th Cir 2000) (internal quotations marks

omitted).  Factors bearing on this decision include:

> (1) the location where the relevant agreements were negotiated and
> executed, (2) the state that is most familiar with the governing law,
> (3) the plaintiff's choice of forum, (4) the respective parties'
> contacts with the forum, (5) the contacts relating to the plaintiff's
> cause of action in the chosen forum, (6) the differences in the costs
> of litigation in the two forums, (7) the availability of compulsory
> process to compel attendance of unwilling non-party witnesses,
> and (8) the ease of access to sources of proof.

*Id* at 498–99.

The district court may also consider "the local interest in the controversy and the relative

court congestion and time to trial in each forum."  *Williams v. Bowman*, 157 F Supp2d 1103,

1106 (ND Cal 2001).

"No one factor is dispositive; a court must balance all seven."  *Panavision Int'l, L.P. v.*

*Toeppen*, 141 F3d 1316 (9th Cir 1998) (citation omitted).  The burden is on the defendant to

establish that the balance of the factors supports transferring venue, as "great weight is generally

accorded plaintiff's choice of forum."  *Lou v. Belzberg*, 834 F2d 730, 739 (9th Cir 1987).

"Weighing of factors for and against transfer involves subtle considerations and is best left to the

discretion of the trial judge." *Sparling v. Hoffman Constr. Co.*, 864 F2d 635, 639 (9th Cir 1988) (internal quotation marks omitted).

### B.  Analysis of Factors

The first step of the inquiry is satisfied because Encore does not dispute that this action could have been brought in the Western District of Washington based on diversity jurisdiction under 28 USC § 1332.  Thus, the court turns to the second step of resolving whether a transfer to Washington would serve the convenience of the parties and witnesses and the interests of justice.

### 1.  Location where relevant agreements were negotiated and executed

The PSA was negotiated and executed in both Oregon and Washington and was intended to be the final resolution of a case which involved litigation between Soule and Mazza in both Oregon and Washington.  Encore points to the fact that the PSA was preceded by two settlement conferences held in Oregon attended by Oregon attorneys.  However, Encore's attorney, Ms. Johnson, negotiated its terms from Tacoma while Mr. Todd, defendants' Oregon attorney, was only minimally involved.  In addition, Encore rescinded the settlement agreement, reducing its relevance to the current dispute regarding contamination of the Tacoma Property.

More importantly, Encore is not suing APES1 to enforce any specific term of the PSA. Instead, Encore alleges that APES1 and American Petroleum were negligent by failing "to take reasonable care to investigate, characterize, and contain the hazardous waste, or to insure that the new fill was not or did not become contaminated" and by committing waste on the Tacoma Property.  Second Amended Complaint, ¶¶ 26, 38.  These allegations pertain to actions or omissions taken by APES1 and American Petroleum in Washington *before* entering into the PSA.  In addition, Encore alleges that APES1 failed "to warn Encore of the contamination, and instead covered up or otherwise concealed the presence of hazardous substances" and breached

its "duty of good faith and fair dealing by misleading [it] as to the value of the Tacoma Property, and by failing to disclose and/or concealing material facts, including soil contamination and code compliance violations."  *Id*, ¶¶ 28, 34.  Although these allegations pertain to actions taken or omitted during negotiation of the PSA, those negotiations occurred in both Washington and Oregon.  Thus, this first factor is neutral.

### 2.  State most familiar with the governing law

The PSA is governed by Oregon law.  Johnson Decl., Ex. A, ¶ 21.  However, the Third Claim against APES1 for breaching its duty of good faith and fair dealing is the only claim conceivably based on the terms of the PSA.  The other three tort claims (misrepresentation, negligence, and waste) are premised on independent duties to which the contractual provisions do not apply.  *See Conway v. Pac. Univ.*, 324 Or 231, 237, 924 P2d 818, 822 (1996) (*en banc*) (explaining the distinction between tort and contractual duties).

A federal district court sitting in diversity must apply the forum state's choice of law rules to determine the controlling substantive law.  *Fields v. Legacy Health Sys.*, 413 F3d 943, 950 (9th Cir 2005).  Under Oregon law the "threshold question in a choice-of-law problem is whether the law of the different states actually conflict."  *Spirit Partners, LP v. Stoel Rives LLP*, 212 Or App 295, 301, 157 P3d 1194, 1198 (2007) (citations omitted).  If no material conflict exists between the laws or interests of the forum and the other state, the court applies forum law. If there is a conflict, the court proceeds to the next step of the analysis and applies the forum's choice of law test.  *Fields,* 413 F3d at 951.

"The proponent of the law of another forum has the obligation to identify material differences between the applicable law of Oregon and of the other forum."  *Spirit Partners, LP*, 212 Or App at 301, 157 P 3d at 1198.  As between Oregon and Washington law, defendants

9 – OPINION AND ORDER

argue that Washington law applies, but have not identified any actual conflict with Oregon law. Instead, defendants contend that Washington law governs the allegation of committing waste on the Tacoma Property, RCW 4.24.630, and the allegation seeking to pierce the corporate veil of a Washington limited liability company, RCW 25.15.060. Encore's argument that this court is most familiar with the governing law is not persuasive. If the case is transferred to the Western District of Washington, Washington conflict of law rules will likely dictate the application of Washington law to the tort claims and, therefore, to the majority of the action.

Therefore, for purposes of this motion, this court assumes, without deciding, that Oregon law applies to some claims and that Washington law applies to other claims, rendering this factor neutral.

### 3. Encore's choice of forum

The deference afforded to a plaintiff's chosen forum should be balanced against both the extent of a defendant's contacts with the chosen forum and a plaintiff's contacts, including those relating to a plaintiff's cause of action. *Pac. Car and Foundry Co. v. Pence*, 403 F2d 949, 954 (9th Cir 1968). "If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, [a] plaintiff's choice is only entitled to minimal consideration." *Id*. The operative facts occurred in both Oregon and Washington, and, as discussed detail below, Oregon had no particular interest in this action.

Furthermore, Encore seeks to recover at least $2,000,000.00 damages in this case due to defendants' alleged concealment of the contamination of the Tacoma Property while simultaneously asking the Pierce County Superior Court to direct defendants, as tenants, to remediate environmental issues that pre-date the lease. Gilman Decl., Ex. C, p. 6. Encore asserts that these actions do not overlap, even though they arise out of the same events and involve the same parties. While Encore has dropped its waste claim in the Pierce County

Superior Court action, the two actions in two different forums represent a bifurcated battle over the same facts in which Encore is arguably seeking conflicting relief, making litigation cumbersome and expensive.

Therefore, little deference is given to Encore's choice of forum.

### 4. Parties' contacts with the forum

All parties have had and continue to have direct and continuing contacts with both Oregon and Washington. Although Mazza resides in Washington, his current business operations are in Portland and he travels weekly to Portland. Briggs Decl., ¶¶ 2–4. Therefore, it is not an undue burden for any of the parties to litigate this case in either Oregon or Washington. Therefore, this factor is neutral.

### 5. Contacts relating to the Encore's cause of action in Oregon

As previously discussed, the parties had many contacts in both Oregon and Washington leading up to Encore's sale of its Portland Property in exchange for the Tacoma Property and other consideration. Therefore, this factor is neutral.

### 6. Differences in the costs of litigation in the two forums

Defendants have submitted evidence, which Encore has not disputed, that due to court case volumes, this case is likely to be resolved more quickly in the Western District of Washington. Gilman Decl., Ex. N. Also, as discussed below, the cost of litigation will be less expensive in Washington due to its location closer to the witnesses and evidence. Thus, this factor favors a transfer of venue.

### 7. Availability of compulsory process

Compulsory process is not available in Oregon for non-party witnesses. The reach of a subpoena under FRCP 45(c)(1)(A) is 100 miles. Thus, any non-party witnesses located in Tacoma cannot be compelled to testify in Oregon. Even though Encore has no objection to

11 – OPINION AND ORDER

telephone or video testimony, those witnesses will still need to be subpoenaed to participate by remote means. Thus, this factor favors a transfer of venue.

### 8. **Ease of access to sources of proof**

Few, if any, of the witnesses and documents are located in Oregon. This case will require discovery in the form of documents held by and testimony from employees of the City of Tacoma, Landau Associates, appraisers, and the real estate agent, all of whom are in Tacoma, regarding the environmental issues associated with the Tacoma Property, the timing of the alleged code violations, Encore's knowledge or lack of knowledge of those conditions, the remedial steps required, and the reasons that the City of Tacoma was ultimately unwilling to purchase the Tacoma Property. It will also require discovery from the Tacoma-based defendants and their attorney, Ms. Johnson, regarding what representations and warranties were made to Encore and what due diligence Encore performed regarding the PSA. All of these Tacoma witnesses will be inconvenienced and caused unnecessary expense by a litigating this case in Portland.

In contrast, the burden for Encore to pursue its claims in Washington is small. Encore owns the Tacoma Property, is registered and has been doing business in Washington for years, and has an attorney in Tacoma, Thomas F. Gallagher. Gilman Decl., Exs. A, F. Although Encore has chosen counsel in Oregon, this is not a valid consideration on a motion to transfer venue. *Smith v. Aetna Life Ins. Co.*, No. C 11–2559 SI, 2011 WL 3904131, at *2 (ND Cal Sept. 6, 2011) ("The convenience of counsel is not considered for purposes of deciding whether a venue is convenient for the purposes of § 1404(a)."), citing *In re Horseshoe Entm't*, 337 F3d 429, 434 (5th Cir 2003) ("The factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of the transfer of venue."). Moreover, Encore's Oregon attorneys, Ms. Elkins and Gary Kahn, are also admitted to practice in Washington and

have represented Encore in both Pierce County and King County Superior Courts.  Gilman Decl.,
Exs. C, L–M.  Thus, Encore is well equipped to litigate in Washington.

The Ninth Circuit has noted that "the location of evidence and witnesses . . . is no longer
weighed heavily given the modern advances in communication and transportation."  *Panavision
Int'l, L.P.*, 141 F3d at 1323.  However, in this case, defendants have made a strong showing that
nearly all of the evidence and non-party witnesses are located in Washington, favoring a transfer
of venue.

### 9.  Local interest in the controversy

Encore contends that Oregon has a localized and public interest in litigating a case
involving the PSA which involved the sale of the Portland Property.  However, this case has little
to do with the Portland Property.  Instead, the key issue is who will bear the burden for cleaning
up the environmental contamination on the Tacoma Property that Encore acquired through the
PSA.  The only connection to the Portland Property is that the Tacoma Property was conveyed as
part of its purchase price.  Encore is not seeking to unwind the sale of the Portland Property.
Regardless of the outcome of this case, the Portland refinery will continue to operate on the
Portland Property.  From that perspective, Washington clearly has more at stake than Oregon in
the outcome of this case.

### 10.  Conclusion

Weighing the relevant factors, this court has no difficulty concluding based on the
convenience of the parties and witnesses and based on the interests of justice that venue should
be transferred to the Western District of Washington.

///

///

13 – OPINION AND ORDER

## II.   Alternative Motion to Dismiss

Since the venue of this action should be transferred, this court need not address

defendants' alternative motion to dismiss the Fourth Claim alleging waste (which Encore has

narrowed to the 14-day period between entry of the PSA on December 17 and the closing of the

sale of the Tacoma Property on December 31, 2013) and a portion of the Second Claim alleging

negligence based on a "duty to take reasonable care to investigate, characterize, and contain the

contaminated soil and address [code] violations."

## ORDER

For the reasons set forth above, Defendants' Motion for Transfer of Venue (docket # 10)

is GRANTED, rendering moot the Alternative Motion to Dismiss.  Accordingly, pursuant to

28 USC § 1404, this case is transferred to the United States District Court for the Western

District of Washington at Tacoma.

DATED  December 22, 2014.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge
